

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-493-CV

IN THE INTEREST OF T.W. AND
C.W., CHILDREN

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Treshia B. appeals from the termination of her parental rights to her children T.W. and C.W. After a bench trial in December 2008, the trial court found by clear and convincing evidence that Appellant had (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger their physical or emotional well-being and (2) engaged in conduct or knowingly placed the children with persons who engaged

---

[1] *See* Tex. R. App. P. 47.4.

in conduct that endangers the children's physical or emotional well-being.[2] The trial court also found that termination of the parent-children relationship would be in the children's best interest.[3] In six issues, Appellant argues that the evidence is legally and factually insufficient to support the trial court's findings. Because we hold that the evidence is legally and factually sufficient to support the trial court's judgment terminating Appellant's parental rights, we affirm that judgment.

As we have explained in a similar case,

> Endangerment means to expose to loss or injury, to jeopardize. The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child.

> . . . Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.

---

[2] ... *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E) (Vernon Supp. 2009).

[3] ... *See id.* § 161.001(2).

To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. The specific danger to the child's well-being may be inferred from parental misconduct alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. . . . A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. Thus, parental and caregiver illegal drug use supports the conclusion that the children's surroundings endanger their physical or emotional well-being. A factfinder may also reasonably infer from a parent's failure to attend scheduled drug screenings that the parent was avoiding testing because the parent was using drugs. As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being.

Because the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a consolidated review.[4]

The evidence at trial shows that in June 2007, while on community supervision for two prior burglaries, Appellant, who was on cocaine, left her fatherless four-year-old and five-year-old alone in a motel room while she went to commit a burglary of a home near the motel. The children had access to an unloaded BB gun, BBs, and prescription drugs including pain pills but had no

---

[4]... *In re J.W.*, No. 02-08-00211-CV, 2009 WL 806865, at *4–5 (Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op.) (citations omitted); *see also In re J.O.A.*, 283 S.W.3d 336, 345–46 (Tex. 2009).

3

access to food other than the remains of the meal they had eaten the night before.

Appellant was caught during the burglary, and she told the arresting officers that she had left her children in the motel room; she testified that the children were alone about thirty minutes. Appellant bonded out on the same day as her arrest, and the children were removed by CPS that same day. Appellant was rearrested in August 2007 because the new offense was a violation of her community supervision conditions. On March 13, 2008, Appellant pled true to the State's motion to revoke her community supervision and was sentenced to serve five years' confinement in the penitentiary. At the termination trial, she testified that she would be paroled in February 2009, less than two months away.

During the time period between the June and August 2007 arrests, Appellant did not fully participate in services although a service plan was already in place; at trial, she excused her noncompliance on the basis that she was "drug sick." She continued to use cocaine during this time. In fact, Appellant testified that she used cocaine approximately every day between 2003 (after the children's father died) until she was arrested in August 2007, except for times of incarceration. She admitted that incarceration was the only thing that had stopped her drug use.

4

She also testified that her mother and sisters used drugs, that she had left her children in their care on occasion, that she and the children had lived with one sister until a few days before her June 2007 burglary, and that she planned on living with her sister after being released on parole in February 2009.

Appellant testified that she had done some drug treatment in prison and would continue drug treatment on parole. She also stated that she was on Step 3 of Narcotics Anonymous (NA) but could not remember what the first two steps were. Appellant had also attended parenting classes while incarcerated. Appellant asked for a chance to demonstrate that she now had "[her] head on straight" and would no longer use drugs even after her impending release from prison.

Appellant hoped that her children could stay in their present placement with her cousin until Appellant could get a job and get back on her feet. Appellant believed that her children were safe with her cousin and wanted them to remain with her cousin if they could not be returned to her but stated, "I feel like no one can love your kids more than you do. . . . I just feel like I want my own kids in my own care and I feel like they deserve [me] and I deserve them." Appellant did not testify about any specific plans for achieving the stability necessary for the successful return of her children.

5

The children had lived with Appellant's cousin and her husband in Seoul, Korea for a few months. The CPS caseworker testified that the children are doing well with the cousin but also admitted that Appellant and the children have a bond and that she had seen this bond during a visit at the prison. There was also evidence that the cousin would allow contact between Appellant and the children. Both the CPS caseworker and the CASA volunteer testified that they believed that termination of Appellant's parental rights would be in the children's best interest.

Applying the appropriate standard of review,[5] we hold that the evidence is legally sufficient to support the trial court's endangerment findings. Also applying the appropriate standard of review,[6] we hold that the evidence is factually sufficient to support those findings. Finally, applying the appropriate standards of review, we hold that the evidence is legally[7] and factually[8]

---

[5] *See In re J.P.B.*, 180 S.W.3d 570, 573–74 (Tex. 2005).

[6] *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

[7] *See* Tex. Fam. Code Ann. § 263.307(a), (b) (Vernon 2008); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *J.P.B.*, 180 S.W.3d at 573–74; Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).

[8] *See* Tex. Fam. Code Ann. § 263.307(a), (b); *R.R.*, 209 S.W.3d at 116; *H.R.M.*, 209 S.W.3d at 108; *C.H.*, 89 S.W.3d at 28; *Holley*, 544 S.W.2d at 371–72.

sufficient to support the best interest finding.  We overrule all of Appellant's issues and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED:  December 17, 2009